IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

PRISON LEGAL NEWS, a project of the :
HUMAN RIGHTS DEFENSE CENTER
 :
    Plaintiff

v. : Case No. 5:15CV00061

NORTHWESTERN REGIONAL JAIL :
AUTHORITY, ET AL.,
 :
    Defendants.

## DEFENDANT NORTHWESTERN REGIONAL JAIL AUTHORITY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COMES NOW the Defendant, Northwestern Regional Jail Authority, by and through undersigned counsel, Alexander Francuzenko, Esq., Lee B. Warren, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and states the following in support of its opposition to Plaintiff's motion for a preliminary injunction.

### FACTUAL BACKGROUND

On or about September 11, 2015, the Plaintiff, Prison Legal News ("PLN" or "Plaintiff"), filed its original Complaint in this action. On or about September 23, 2015, Plaintiff filed a First Amended Complaint. On or about November 4, 2015, filed its Second Amended Complaint (the "Second Amended Complaint") against the Northwestern Regional Jail Authority ("NRJA"); James F. Whitley, individually and his official capacity; Clay Corbin, individually and his official capacity[1]; and Does 1-10, in their individual and official capacities, pursuant to 42 U.S.C. § 1983, claiming constitutional violations under the First and Fourteenth Amendments of the United States Constitutions. (ECF Docket No. 25.)

---
[1] Answers have been filed on behalf of the Authority, Whitley, and Corbin.

1

PLN seeks a preliminary injunction against the NRJA. (ECF Docket No. 6.) The specific relief sought is

> a preliminary injunction enjoining Defendants from unconstitutionally censoring Plaintiff's and other senders' mail, and ordering Defendants to provide all senders of censored mail with constitutionally adequate due process notice and an opportunity to challenge Defendants' censorship decisions.

(ECF Docket No. 6 at 3.)

## ARGUMENT

### I. Plaintiff's requested injunction is insufficiently specific to satisfy Rule 65

A preliminary injunction is subject to the usual rules for any injunction. *See* Fed. R. Civ. P. 65(a). A preliminary injunction must therefore "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." *Id.* R. 65(d). An injunction cannot merely tell the defendant to obey the law; it must describe in detail how the defendant is to change its behavior. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1201 (11th Cir.1999); *Payne v. Travenol Labs., Inc.,* 565 F.2d 895, 897–98 (5th Cir.1978).[2] Again, Plaintiff seeks

> a preliminary injunction enjoining Defendants from unconstitutionally censoring Plaintiff's and other senders' mail, and ordering Defendants to provide all senders of censored mail with constitutionally adequate due process notice and an opportunity to challenge Defendants' censorship decisions.

(ECF Docket No. 6 at 3.) This injunction amounts to a requirement to obey the law. It is a truism that Defendant must not unconstitutionally censor mail or provide constitutionally inadequate notice. But what level of censorship is unconstitutional, what levels of notice are adequate, and what constitutes a meaningful opportunity to challenge censorship? Plaintiff has failed to give any indication of what its proposed relief would actually look like, instead taking an approach so maximalist as to be meaningless. The Plaintiff does not provide the Defendants

---

[2] The Fourth Circuit cited these cases in *U.S. SEC v. Pirate Investor LLC*, 580 F.3d 233, 255 at n. 23 (4th Cir. 2009), where it declined to decide whether the Fourth Circuit would adopt a similar rule.

2

nor the Court with the specifics needed to deal with the relief requested.

## II. Plaintiff fails to satisfy the correct four-factor test for such an injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction "is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981). "The traditional purpose of a preliminary injunction is to prohibit an action." *Perry v. Judd*, 840 F.Supp.2d 945, 950 (E.D. Va. 2012). A mandatory injunction, *i.e.*, one that requires a positive action, "should only be granted in those circumstances when the exigencies of the situation demand such relief." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003) (citing *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980)). In other words, the plaintiff's standard for obtaining positive injunctive relief is even higher than for an injunction against certain behavior.

To establish the appropriate factors for this Court to consider in ruling on the preliminary injunction, Plaintiff cites the *Blackwelder Furniture* standard, which the Fourth Circuit explicitly overturned as in "fatal tension" with the standard in *Winter*. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977) (vacated on other grounds by *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 559 U.S. 1089 (2010)). *See also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355 (4th Cir. 2010) (reissuing portion of vacated *Real Truth* decision rejecting *Blackwelder* in favor of *Winter*).

3

The *Blackwelder* and *Winter* standards differ in many important ways, all of which demonstrate that it is harder to obtain an injunction under *Winter* than it was under *Blackwelder*. First, under *Winter*, the plaintiff must "make a clear showing that it will likely succeed on the merits at trial." *Id.* at 346 (citing *Winter*). In *Blackwelder*, that element was balanced against hardships on the various parties and whether a "grave or serious question" was presented. *Id.* at 346-47 (citations omitted). Second, *Winter* requires the plaintiff to demonstrate irreparable harm, whereas *Blackwelder* required a balancing of harms to the parties. *Id.* at 347 (citations omitted). Third, the *Winter* Court stressed the importance of the public consequences of the injunction, whereas *Blackwelder* analyses did not always consider the public interest. *Id.* (citations omitted). Fourth, *Winter* requires the plaintiff to establish all four factors, whereas *Blackwelder* allowed courts to balance the factors as interconnected. *Id.* (citations omitted).

In short, Plaintiff bears a very heavy burden in moving for a preliminary injunction.

**A. Plaintiff fails to demonstrate that it is likely to succeed on the merits**

The relevant substantive law in this case begins with *Turner v. Safley*, 482 U.S. 78 (1987). The Court there set out four factors for courts to use in analyzing a prison regulation that infringes on an inmate's constitutional rights. *Id.* at 89. Those factors are

> [1] a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.
>
> . . . [2] whether there are alternative means of exercising the right that remain open to prison inmates. . . .
>
> . . . [3] the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. . . .
>
> . . . [4] the absence of ready alternatives . . . [or] the existence of obvious, easy alternatives . . . .

*Id.* at 90-91. Two years later, the Supreme Court extended its rationale, and these factors, to

4

claims by non-inmates attempting to communicate with inmates. *Thornburg v. Abbott*, 490 U.S. 401, 410 n. 9 (1989) (rejecting separate standards for analyzing "regulations affecting rights of prisoners *and* outsiders") (emphasis original). The challenging party bears the burden of proof in this analysis. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted).

### 1. There is a valid, rational connection between the policy and the supporting government interest

The first *Turner* factor considers whether the objective "is legitimate and neutral" and whether the regulation is "rationally related to that objective." *Thornburg*, 490 U.S. at 414. The protocols and policy, as here, meet the neutrality criterion. *Id.* at 415. On the record currently before this Court, specifically Exhibit 2 to the Motion, the ADC's reasons for the disputed policy are 1) contraband control and 2) the reduction of the amount of inmate personal property.[3] The disputed policy accomplishes both of these objectives.

As for contraband control, books and magazines provide the opportunity for inmates to hide contraband items. Housing the publications on common book carts reduces a given inmate's ability to use those publications to hide contraband. Contraband can make its way into the ADC through books and magazines sent from outside the ADC. If the ADC orders these publications, instead of inmates, it is substantially less likely that someone outside the ADC will attempt to smuggle contraband in through such methods.

As for reducing the amount of inmate personal property, the policy gives inmates access to any available book on the library cart as well as one of several copies of five magazines placed on each cart. They still have access to substantial reading material; it simply does not belong to them personally. This is not unreasonable in the context of a jail where most inmates are either

---

[3] Plaintiff's Motion does not focus on these two justifications, even though it includes as an exhibit the memorandum containing those justifications. Plaintiff's argument on the first *Turner* factor (pages 7 through 10 of its brief) instead appears to be "canned" language from a case involving a "blanket ban" on books and magazines, which is not the case here.

5

pretrial detainees or serving sentences of less than one year.[4]

### 2. Inmates have other means of learning about current events

In the "alternative means" analysis, the right at issue "must be viewed sensibly and expansively." *Thornburgh*, 490 U.S. at 417. If the right at issue is inmates' access to written news, the policy is appropriate. The policy at issue does not deprive inmates of all reading material or even severely limit their reading material. They still have access to the book cart in their unit as well as copies of five magazines, including one news magazine (*Time*), in proportion to the size of their unit.

### 3. The proposed injunction would increase the flow of property in the ADC and reduce inmates' and guards' safety

The third factor considers whether exercising the right in question will create "significantly less liberty and safety" for inmates and guards. *Thornburgh*, 490 U.S. at 418 (quoting *Turner*, 482 U.S. at 92). Allowing inmates to order and receive publications from outside the ADC provides far more opportunities for contraband than a policy sending all publications to the ADC. The reduction in inmate property also reduces administrative burden on the ADC. As a result, the current policy is intended to enhance the safety of the inmates and guards.

Plaintiff argues that its own specific publications have not been found to be a threat to jail security. If the ADC had banned Plaintiff's publications, this fact might be relevant, but the policy is neutral on its face. The disputed policy addresses the effects of *all* outside publications, not merely Plaintiff's.

### 4. Plaintiff provides no obvious, easy alternatives

As discussed above, the Motion provides no guidance to this Court or the ADC as to

---

[4] It is anticipated that a representative on behalf of the NRJA will address the specific issues regarding the policy at the hearing.

6

Case 5:15-cv-00061-EKD-JCH   Document 38   Filed 12/21/15   Page 6 of 10   Pageid#: 309

what injunctive relief would satisfy Plaintiff's First Amendment claims. As for its due process claims, Plaintiff would like a notice more specific than "refused per jail policy" but does not say what more notice it would need. There are no allegations that the Plaintiff attempted to contact the Defendants and appeal the refusal of its publication. It would also like "an appeals process" which would apparently involve the courts somehow; again, Plaintiff does not say how this would work. (ECF Docket No. 8 at 14.) Plaintiff has failed to identify any easy alternatives other than reference to the Federal Bureau of Prisons's system, but it does not explain how that system provides any more notice than the ADC's system.

### B. Plaintiff fails to demonstrate irreparable harm

Defendant will assume that Plaintiff's inability to deliver its publications directly to inmates, in the manner that it desires, constitutes some minimal harm. That harm may continue until this case is resolved, absent a preliminary injunction. However, any minimal harm will not do in order to support a preliminary injunction; it must be *irreparable* harm. The harm here clearly is not irreparable.

First, Plaintiff's prosecution of this action belies its claim to irreparable harm. A party's delay in seeking a preliminary injunction may suggest the absence of irreparable harm. *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)). Plaintiff learned that its publications were being rejected as early as October 2014. (ECF Docket No. 25 at ¶¶ 24, 26, 27.) Plaintiff did not file its Complaint to prevent that allegedly irreparable harm until September 11, 2015, almost a year after it learned of the harm. Plaintiff filed its motion for a preliminary injunction on September 23, 2015. These delays suggest that the harm to Plaintiff is not as irreparable as claimed by the conclusory language in its supporting affidavits.

7

Second, Plaintiff's "zero to 60" litigation strategy meant that it did not even try to find out whether it could appeal the censorship decisions or whether it could get its publications to ADC inmates through alternative means, such as the library carts stationed in each unit. In other words, Plaintiff did not try to "repair" the harm before deciding that it was "irreparable." This fact further weighs against a preliminary injunction arising from this Court's equity power.

### C. The public interest does not favor a preliminary injunction against a public entity where there is a legitimate dispute over the policy at issue

If it were overwhelmingly obvious that ADC inmates had no meaningful access to reading material, a preliminary injunction might be appropriate. However, that is not the case, as discussed above. The disputed policy attempts to strike a balance between inmates' interest in reading materials and the ADC's interest in security and orderliness. Plaintiff believes that the policy fails to strike a lawful balance. But the merits of that claim remain to be litigated. At this early stage, it is not obvious that the disputed policy violates the Constitution. Preliminary injunctions are an extreme remedy which substantially interferes with one party's rights before those rights have been adjudicated. This is why the *Winter* Court announced such a demanding standard for preliminary injunctions. The public has no interest in allowing a party to show up a year late demanding an immediate injunction of unspecified detail that will rewrite the NRJA's policies and attempt to dictate its internal affairs.

## **CONCLUSION**

This Court should deny Plaintiff's request for a preliminary injunction.

8

Respectfully submitted,

_____/s/_____
Alexander Francuzenko, VSB 36510
Lee B. Warren, VSB 77446
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
lwarren@cookcraig.com
*Attorneys for Defendant Northwestern Regional Jail Authority*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Opposition to Plaintiff's Motion for Temporary Restraining Order via ECF, this the 21st day of December, 2015 to:

Jeffrey Edward Fogel, Esq.
Jeffrey E. Fogel Law Office
913 E. Jefferson Street
Charlottesville, VA  22902
*Attorneys for Plaintiff*

Steven David Rosenfield, Esq.
Rosenfield & Wayland
913 East Jefferson Street
Charlottesville, VA  22902

Lance Theodore Weber, Esq.
Human Rights Defense Center
Post Office Box 1151
Lake Worth, FL  33460
*Attorneys for Plaintiff*

Sabarish P. Neelakanta
Human Rights Defense Center
Post Office Box 1151
Lake Worth, FL  33460
*Attorneys for Plaintiff*

_____/s/_____
Alexander Francuzenko
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
*Attorney for Defendant Northwestern Regional Jail Authority*