# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

PRISON LEGAL NEWS, a project of
HUMAN RIGHTS DEFENSE CENTER, a
Washington not-for-profit organization

        Plaintiff,

vs.

NORTHWESTERN REGIONAL JAIL
AUTHORITY *et al.*,

        Defendants.

Case No. 5:15-cv-00061-EKD-JCH

## DECLARATION OF STEVEN D. ROSENFIELD

I, Steven D. Rosenfield, pursuant to 28 U.S.C. § 1746, make this Unsworn Declaration Under Penalty of Perjury, and declare as follows:

1. I am one of the plaintiffs' counsel in the above styled case and I make this affirmation in support of an application for attorney's fees pursuant to 42 U.S.C. § 1988 covering the hours I have expended in this matter and the expenses I have incurred. I am submitting a request for fees and expenses for my work on this case beginning on July 2, 2014.

2. <u>Experience.</u> I have been licensed in Virginia since 1977 where I have been practicing law in Charlottesville. For the past 43 years, a central and regular part of my practice has been representing people and groups in civil rights cases including housing discrimination, employment discrimination, prisoner rights, First Amendment Speech and Religious Expression, voting rights, police misconduct, Equal Protection and Due Process rights, and other civil rights work. In 1976, I undertook the representation of a prisoner under the Third-year Practice Rule in the

Western District of Virginia. Since then, I have represented hundreds of prisoners and I have probably been to more jails, mental hospitals, and VDOC prisons than any plaintiffs' lawyer in the state.

I have been lead or co-counsel in more than 100 litigated civil rights cases and have been involved in another couple of hundred civil rights cases resulting in a resolution without the necessity of filing suit. I have litigated more than 30 cases in the Fourth Circuit Court of Appeals. I have won three civil cases in the Supreme Court of Virginia. I have had 44 jury trials, three of which were capital cases (state and federal courts) resulting in life sentences. I have been appointed to nine capital cases, eight resulting in life sentences and one resulting in a not-guilty-by-reason-of-insanity tried before a state judge. Of my four federal capital cases, I was appointed in this Court by Judge Samuel Wilson on the recommendation of Professor David Bruck.

<u>Reputation</u>. I have received the following awards and honors since I began practicing law:

| | |
|---|---|
| Virginia Trial Lawyers Association 2018 Oliver Hill Courageous Advocate Award | President, Charlottesville Albemarle Bar Association |
| Jay Worrall's Offender Aid & Restoration award for criminal justice 1993 | 2018 Lifetime Achievement award by the Charlottesville Albemarle Bar Association |
| Virginia Law Foundation, Class of 2012 (accepting only 1% of Virginia lawyers) | Co-founder and longtime secretary of the Virginia Association of Criminal Defense Lawyers |

| | |
|---|---|
| American Red Cross Humanitarian Spirit Hero Award, 2019 | Sen. Emily Couric Community Leadership Award for work in opposing the death penalty |
| Virginia State Bar 2000 Lewis F. Powell, Jr. Pro Bono Award | Past President Virginians for an Alternative to the Death Penalty |
| Past President, Charlottesville Albemarle Criminal Bar Association | |

3. I have recently turned my attention to starting The Virginia Prisoner Project intended to represent prisoners injured (state and constitutional torts) while in jails, prisons, and mental hospitals. The Project will also co-counsel with lawyers and law firms wanting to acquire *pro bono* hours representing injured prisoners. The Project expects to reduce the case load of courts, educate lawyers how to litigate prisoner cases, provide free CLEs, educate prisoners about the law and be a resource center for lawyers undertaking representation of injured prisoners.

4. I will address each of the twelve *Johnson* factors (*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[1] adopted by the Fourth Circuit in *Barber v. Kimbral, Inc.*, 577 F.2d 216 (4th Cir. 1978)) and used by this Court (see *Doe v. Alger,* 2018 U.S. Dist. LEXIS 165957, September 27, 2019).

---

[1] The twelve *Johnson* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

1) <u>The time and labor expended</u>

My time log is attached as an exhibit representing the time I have put into this case. The time I expended was necessary and I utilized my time in a limited way. Jeffrey Fogel and I began garnering facts in order to see if there was merit to our client's complaint. Visiting defendants' jail and meeting several prisoners who were interested in receiving PLN and their other publications was critical in evaluating the case. I remained active in the case in the beginning, but my role changed once PLN's in-house counsel began taking a stronger role. I continued throughout the case to monitor the activities, to review the pleadings and discovery, to consult with Paul Wright and PLN's counsel and to help on certain discreet matters. My time log reflects many of the activities in which I was involved, but for which I did not charge. I did this to eliminate duplicative work and to utilize sound billing judgment that I have learned from long experience. The hours for which I submit my time for compensation is quite low for bringing a major federal civil rights lawsuit.

2) <u>The novelty and difficulty of the questions raised</u>

This case was neither novel nor difficult except to the extent that the defendant insisted on litigating the unresolved portion of the case. PLN has had a great deal of success in Virginia including two cases that Mr. Fogel and I won and which raised the same issues presented here. The defendant chose to concede certain issues, but litigate one other.

3) <u>The skill required to properly perform the legal services rendered</u>

With the hundreds of cases that Mr. Fogel and I have litigated over the course of our respective careers, this case was handled with great efficiency. Likewise, counsel working for PLN utilized their time efficiently given the need to prepare the damages portion of the case for trial. The biggest obstacle in concluding this case more promptly was the obstreperousness of the defendant and the reluctance to resolve the only contentious issue early on. The skills utilized by me limited my time to analyzing the case, investigating and garnering facts to support our Complaint, assorted tasks during the litigation, and preparing support for our fee petition.

4) <u>The attorney's opportunity costs in pressing the instant litigation</u>

I limited my time in this in part because it was being well handled by our legal team, but also because I was involved in a case challenging the conditions on Virginia's death row which required more of my time. Undertaking civil rights cases has always been a risk for me because I must be the prevailing party in order to obtain my fee. Constitutional torts are much more difficult in general than state torts. This case was no different than most of my civil rights cases.

5) <u>The customary fee for like work</u>

My first civil rights case in 1981 was a First Amendment jury trial in Danville which resulted in my being paid $75 an hour by Judge James Turk; he added an enhancement of $15 an hour to that. Since then, I have raised my civil rights rates periodically to equal my rates for criminal cases in which I was retained. I last charged $450 an hour in 2014 in my last felony case.

Part of my practice included representing people injured in routine automobile cases and some medical malpractice cases. I estimate that in some of those cases my contingent fee

amounted to more than $1,000 an hour.  The state tort cases I did were more remunerative than the constitutional tort cases. I attribute that to the easier standard in a state P.I. case and the often relative ease in litigating them (when litigation was necessary).  Yet, in constitutional cases, the standards are much greater, the litigation usually more fierce, and the compensation a bigger gamble justifying my higher hourly rate.

6) The attorney's expectations at the outset of the litigation

I expected we would win since we had earlier won similar cases against the Virginia Department of Corrections and the jail in Virginia Beach with the same plaintiff. Nevertheless, expecting victory does not substitute for defendants who also want a favorable outcome.

7) The time limitations imposed by the client or circumstances

There were no time limitations imposed by PLN.  They were patient and appreciative of our conscientiousness at moving the case along.

8) The amount in controversy and the results obtained

The main purpose in bringing this case was to obtain equitable relief because it was important for PLN to set important precedent while making sure that prisoners had the opportunity to read matters of importance to prisoners.  The monetary award was less important.

9) The experience, reputation and ability of the attorney

My experience, reputation and abilities are covered in paragraphs 2 & 3 above.

10) The undesirability of the case within the legal community in which the suit arose

In my experience, there are very few lawyers who want to undertake and litigate First Amendment and associated Fourteenth Amendment cases. The referrals I receive from lawyers from around the state speaks to the reluctance of lawyers to delve into areas in which they are unfamiliar and inexperienced. To that extent, very few lawyers litigate First Amendment cases.

11) <u>The nature and length of the professional relationship between attorney and client</u>

I have represented PLN in two other cases, both of which were successful.

12) <u>Attorneys' fees awards in similar cases</u>

Prior attorney fees awards include a decision four years ago in *PLN v. Stolle* which provided for $400 an hour. Even poor civil rights attorneys are entitled to a pay raise which is consistent with my request for a rate of $450 an hour, the same rate I charged in criminal cases in 2014. I have also received compensation under the PLRA for successfully representing prisoners under the restrictive fee award schedule setting my rate at 150% of the CJA rate for court appointed lawyers. I am ashamed to mention the hourly rate I received in PLRA fee shifting cases.

5. <u>Settlement efforts</u>. Not covered by the *Johnson* factors, but which should be, is the effort of plaintiffs' counsel to resolve the case as early and often as possible. It is the conduct of the defendant that accounts for many of the hours claimed by my fee declaration. Sometimes, our efforts to reach a resolution were not even addressed by the defendant - we were simply ignored. Because this cause could have resolved at many earlier stages, but for the refusal of the defendants' willingness, the time spent

litigating this case should be seen through the lens of extra and extensive work to obtain a favorable outcome.

Fees and costs.  I spent a total of 38.4 hours in this case at the rate of $450 an hour for which I am seeking compensation in the amount of $ 17,280.00.  I incurred expenses for which I seek compensation in the amount of $ 130.90 and that record is attached hereto.  There is an unwritten rule by some courts which reduce the travel time by plaintiff's counsel to one-half the hours incurred.  I ask that this Court reduce my fee for travel, if defense counsel charged his client for one-half the fee incurred for his travel.  In cases in which I was paid a retainer, I always charged for my time traveling.  This is so because I could not earn money from other cases while I was traveling

I declare this statement to be true under the pain and penalty of perjury.

> Executed on December 16, 2019
>
> /s/ Steven D. Rosenfield
> Steven D. Rosenfield, VSB#16539