UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

PRISON LEGAL NEWS, a project of
HUMAN RIGHTS DEFENSE CENTER, a
Washington not-for-profit organization

        Plaintiff,

vs.

NORTHWESTERN REGIONAL JAIL
AUTHORITY *et al.*,

        Defendants.              /

Case No. 5:15-cv-00061-EKD-JCH

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff Prison Legal News ("PLN") hereby submits, pursuant to this Court's Order, entered October 8, 2019 (Dkt. No.124), this Memorandum in Support of its Petition for Attorneys' Fees and Costs incurred in litigating this case.

### I. NATURE OF THE CASE

PLN sued to enjoin Defendants' policies and practices which resulted in the censorship of its monthly publications and books, mailed to prisoners in custody at the Northwestern Regional Adult Detention Center ("NRADC"), in violation of the First Amendment and to redress Defendants' policies and practices of not affording due process notice—an opportunity to challenge the censorship and to obtain independent review of censorship decisions—as required by the Fourteenth Amendment, and to seek compensatory and nominal damages for these constitutional violations.

## II. ENTITLEMENT TO ATTORNEYS' FEES

### A. Prevailing Party Status

42 U.S.C. § 1988 ("Section 1988") entitles Plaintiff, as a prevailing party, to a reasonable attorneys' fee award and costs. *See, e.g., Johnson v. City of Aiken,* 278 F.3d 333, 336, n.6 (4th Cir. 2002) ("This statute provides an exception to the American Rule that each party, regardless of who prevails, must pay its own attorneys' fees"); *Daly v. Hill,* 790 F.2d 1071, 1076-77 (4th Cir. 1986) ("Congress anticipated that § 1988 would further this end through attracting competent counsel to civil rights cases."). The relevant portion of Section 1988 is as follows:

> In any action or proceeding to enforce a provision of section [] . . . 1983 . . . of this title, . . . The court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The Supreme Court has held that plaintiffs are prevailing parties if "they succeed[] on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). *See also Hewitt v. Helms,* 482 U.S. 755, 760 (1987). "'The touchstone of the prevailing party inquiry,' this Court has stated, is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792–793 (1989); *Hewitt v. Helms,* 482 U.S. 755, 760 (1987) (plaintiff must 'receive at least some relief on the merits of his claim before he can be said to prevail')"; *Sole v. Wyner,* 551 U.S. 74, 82 (2007).

### B. The Issues

This case revolved around three issues:

1) Did Defendants' rejection of PLN's publications due to a jail policy prohibiting prisoners from receiving books or magazines through the mail, "directly from the publisher, or from a distribution source" violate the First Amendment?

2) Were the Fourteenth Amendment due process rights of PLN to notice of the Jail's censorship, an opportunity to be heard, and an independent review of Defendants' censorship decisions also violated?

3) Were PLN's Fourteenth Amendment rights to equal protection of law violated where Defendants censored "secular" books but religious books could be delivered to prisoners at the Jail.

After this suit was filed, the parties engaged in settlement discussions. They subsequently presented two consent decrees—one setting forth a procedure for notifying senders of mail to the Jail of the rejection of any mail and providing an opportunity to appeal that rejection, the other permitting prisoners at the Jail access to publications sent directly from publishers through the mail. The dual consent decrees entered by this Court effectively granted the Fourteenth and First Amendment injunctive relief sought by PLN in this suit. *See* Dkt. Nos. 47 and 50.

Following cross motions for summary judgment, pursuant to the consent decrees between the parties, the Court dismissed Corbin as a Defendant in this suit. It also granted Defendant Whitley qualified immunity on PLN's First Amendment claim, and, after ordering supplemental briefing on PLN's equal protection claim, dismissed that claim as well.[1] The court also denied PLN's claims for declaratory relief and punitive damages. However, the court found the Northwest

---

[1] The Court's opinion on the cross motions for summary judgment had denied Plaintiff summary judgment on the equal protection claim. "However, because defendants' motion for summary judgment did not expressly ask for judgment in its favor on the equal protection claim, the court could not grant judgment in defendants' favor on that claim." Dkt. No. 101. Accordingly, the Court required additional briefing, following which it granted summary judgment to the Defendants on the basis that "PLN's supplemental briefing focuse[d] entirely on a new theory and basis for its equal protection claim, one that was not pled in its complaint nor previously argued before the court." *Id.* at 3.

Regional Jail Authority ("NRJA") and Whitley liable as a matter of law on PLN's due process claim and found genuine disputes of material fact precluding summary judgment for either PLN or NRJA with respect to Plaintiff's First Amendment claim.

On November 29, 2018, the parties proceeded to a bench trial on PLN's First Amendment claim against NRJA, as well as to determine the damages for this claim, if proven, and the damages to be assessed against NRJA and Whitley for violating PLN's due process rights. On September 30, 2019, the Court entered judgment in favor of PLN and against NRJA on Plaintiff's First Amendment claim, awarding $669.12 in compensatory damages, $197.12 in cost damages, and $472 in presumed damages for the First Amendment violation. The court also awarded PLN $472 in compensatory damages for PLN's Fourteenth Amendment due process claim. Finally, the court entered a declaratory judgment that the Jail's "policy prohibiting prisoners from receiving books or magazines 'through the mail, directly from the publisher, or from a distribution source,' and the actions of defendants pursuant thereto, violated PLN's First and Fourteenth Amendment rights." Dkt. No. 123.

### C. Degree of Success

This Court's entry of the consent decrees providing senders of mail to the Jail due process and allowing books and magazines sent by publishers establishes that PLN prevailed on its claims for injunctive relief on both its First and Fourteenth Amendment claims. *See Maher v. Gagne,* 448 U.S. 122, 129 (1980) (upholding fees where plaintiffs settled and obtained a consent decree); *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280-82 (4th Cir. 2002) (agreement incorporated in court order establishes prevailing party status). This alone would have been sufficient to entitle PLN to attorneys' fees under Section 1988. However, the fact that PLN also succeeded on its First

Amendment claim—and was awarded damages against NRJA thereto—and that it prevailed on its due process claims against NRJA and Whitley, being awarded damages for that claim also, further cements PLN's prevailing party status.

All three of PLN's legal issues were intricately related and based on the same nucleus of facts and principles of law (i.e. the application of *Turner v. Safely,* 482 U.S. 78 (1987) to the facts at issue); therefore, Plaintiff should receive a fully compensable fee for all work reasonably related to the litigation. Essentially, Defendants' April 1, 2014 policy banned the delivery of books and magazines mailed from publishers to NRADC prisoners (First Amendment claim), the policy under which these publications were banned did not provide adequate means for Defendants to notify senders that their mail had been censored, nor an avenue to appeal that censorship decision (due process claim), and while the policy banned "secular" books from publishers, it nevertheless permitted the delivery of religious books to prisoners at the Jail (equal protection claim). *See Hensley, supra* 461 U.S. at 434–35 ("Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.").

The denial of PLN's declaratory relief and equal protection claims do not disentitle—or even adversely affect—PLN's fee award. First, as this Court noted, PLN's claim for declaratory relief did not fail because, as Defendants contended, it was moot. *See* Dkt. No. 89 at 24. Rather, the Court declined to exercise its discretion to issue declaratory relief because:

> [h]ere, the court believes that the entry of the consent decrees granting PLN the injunctive relief it sought and the court's ruling allowing a jury trial on some issues—taken together— are sufficient to vindicate PLN's rights in this case, and so a declaratory judgment is not necessary to clarify or settle the legal questions in issue. Accordingly, the court declines to exercise its discretion to issue declaratory relief in this case.

*Id.* at 25 (citing *Volvo Constr. Equipment N. Am., Inc. v. CLM Equipment Co., Inc.,* 386 F. 3d 581, 594 (4th Cir. 2004) (quoting *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir. 1937)). Simply put, the failure of PLN's declaratory relief claim due to its successful claims for injunctive relief and First Amendment liability and damages at trial does not negatively impact Plaintiff's prevailing party status.

Nor does the denial of PLN's equal protection claim at summary judgment affect PLN's ability to recover all of its attorneys' fees. The crucial question is "did the plaintiff fail to prevail on claims *that were unrelated to the claims on which he succeeded."* *Hensley*, 461 U.S. at 434 (emphasis added). In cases such as the instant one where the claims "involve a common core of facts or [are] based on related legal theories[,]" most of the attorneys' time "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Such a lawsuit cannot be viewed as a series of discrete claims.*" *Id.* at 435 (emphasis added). As explained above, the issues in this case could not be easily disentangled from one another; PLN's three claims all arose from Defendants' April 1, 2014 policy, their failures to notify correspondents of censorship decisions resulting from it, and Defendants' exceptions to it. The failure of one of those claims, therefore, does not diminish the success of Plaintiff's case, the litigation of which resulted in two consent decrees providing for injunctive relief and court-awarded damages under the First Amendment and due process claims.

### D. Calculation of Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," known as the "lodestar," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. *See also Plyler v. Ovate,* 902 F.2d 273, 277 (4th Cir. 1990) ("determination of the hourly rate will generally be the critical inquiry in setting the "reasonable fee," and the burden rests with the fee applicant to establish the reasonableness of a requested rate.").

A reasonable hourly rate is the prevailing comparable market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Blum v. Stenson,* 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community"); *Trimper v. City of Norfolk*, 58 F.3d.68, 76 (4th Cir. 1995) ("the great weight of the law . . . holds that the proper measure of fees is the prevailing market rate in the relevant market"). The relevant legal community is generally that in which the district court sits. *See Rum Creek Coal Sales v. Caperton,* 31 F.3d 169, 179 (4th Cir. 1994) ("we observed that the community in which the court sits is the first place to look to in evaluating the prevailing market rate.). A private market rate is utilized regardless of whether the plaintiff is represented by private or non-profit counsel. *See Blum*, *supra* 465 U.S. at 894 ("It is also clear from the legislative history that Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization.").

Plaintiff has presented evidence of the prevailing market rate through its attorneys, through declarations from independent counsel with knowledge of the market rates in the relevant community, and through recent fee awards. *See infra*. This is "satisfactory specific evidence of

the prevailing market rates in the relevant community for the type of work for which [Plaintiff] seeks an award." *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). *See also Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir. 1987).

In making lodestar determinations, courts are also guided by the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978): (1) the time and labor expended; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) the attorney's expectations at the outset of litigation; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the clients; and (12) awards in similar cases. However, the court need not address in detail every single one of these factors. *See Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assoc., LLC,* 699 F. Supp. 2d 766, 768 (E.D. Va. 2009). More importantly, the Supreme Court has stated that the lodestar calculation is "the guiding light of . . . fee shifting jurisprudence," and held that "there is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551-52 (2010) (and explaining why the objective lodestar approach is far superior to the subjective *Johnson* twelve-factor approach). Nonetheless, this Court can consider the *Johnson* factors where appropriate. *Cf. Bradford v. HSBC Mortg. Corp.,* 859 F. Supp. 2d 783, 791 (E.D. Va. 2012) (*Johnson*/*Barber* factors may only be used to adjust the lodestar calculation if such factors are not adequately accounted for in the lodestar figure).

The Plaintiff is seeking compensation for the time spent by its attorneys at rates ranging from $250 to $450 per hour and paralegal rates at $125. The hours expended on this case by each member of PLN's litigation team, as reflected in the records filed alongside Plaintiff's motion, are reasonable; moreover, the requested amounts are reasonable in light of the Charlottesville/Harrisonburg market rates and the *Johnson* factors, all of which are discussed below.

1. <u>Time and Labor Expended</u>

All of the work undertaken by the attorneys and paralegals are detailed on the time records attached to counsel's declarations and attachments thereto. These hours were reasonable, necessary, and consistent with the requirements of this case.[2] Counsel have exercised billing judgment by reducing the amount claimed by the attorneys and paralegals approximately 10-15%, and therefore request that each attorney and paralegal's work be compensated accordingly.[3]

It should be noted that the defense vigorously contested each of the claims made by PLN. Only one lawyer from the plaintiff's team engaged in depositions (Mr. Fogel); with the exception of trial, only one lawyer traveled to Harrisonburg for Court (Mr. Fogel); and, where physical

---

[2] All attorneys who contribute their service to a case are to be awarded reasonable attorney's fees so long as the award is "justified by the contributions of each attorney." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 180 (4th Cir. 1994). In this instance, as the declarations of counsel make plain, the work was divided among counsel to ensure that no unnecessary duplication took place. *See* Fogel Decl., at ¶11; Rosenfield Decl. at 4.

[3] The hours include time spent in preparing this fee petition, which is properly compensable in a Section 1988 fee award. *See e.g., Daly v. Hill,* 790 F.2d 1071, 1080 (4th Cir. 1986) ("Time spent defending entitlement to attorney's fees is properly compensable in a § 1988 fee award."); *American Canoe Ass'n, Inc. v. U.S. Envtl. Protection Agency,* 138 F. Supp. 2d 722, 746 (E.D. Va. 2001) ("It is well-settled that reasonable time and expenses spent preparing a fee petition are compensable."). Counsel for Plaintiff endeavored to avoid much of this litigation, including additional attorneys' fees necessitating fees for this petition, by seeking to negotiate a settlement throughout the litigation, including on the morning of trial.

attendance was not required, only one lawyer for PLN participated in conference calls with the Court (Mr. Fogel). These measures were intended to keep the hours expended as limited as possible. Other tasks required more lawyers to participate, such as the writing and editing of discovery requests, motions and briefs, and conferring (by telephone and by email) to discuss particular issues including strategies for the case, settlement, and this petition. Likewise, trying to resolve the case required input from multiple attorneys along with PLN's organizational representative, Paul Wright. A lawyer's "commitment to work closely with his client is certainly laudable. Conferences with clients are an important part of any litigation and attorney time reasonably spent with clients in preparing a case should be part of the hours compensated in an attorney's fee award." *Daly v. Hill,* 790 F.2d 1071, 1079 (1986). *See also Large v. Fremont Cty.,Wyoming,* No. 05-CV-0270, 2013 WL 12342417, at *6 (D. Wyo. Sept. 20, 2013) ("The complexity of this case justifies collaboration by all counsel on matters of great importance and difficulty and facilitated distribution of tasks among attorneys.") In addition, paralegals were principally used to collect documents related to defense discovery requests, correspond with prisoners at the NRADC, appeal innumerable denials by the Jail of PLN publications, and otherwise to undertake roles familiar to paralegal work, all reducing the work of the attorneys and the fees sought herein.

2. The Novelty and Difficulty of the Case

The First Amendment and due process principles in this case were not novel to Plaintiff's experienced counsel; they did, however, require a close examination of the facts and the application of those facts to the applicable principles. Moreover, Defendants fought hard on every issue, raising the difficulty and amount of time needed to properly prosecute this action.

Notwithstanding the above, following trial, significant time was spent briefing the difficult issue of the propriety of the fact-finder determining the amount of presumed damages attributable to Defendants' First Amendment violation. With no binding authority directly on point, PLN's counsel surveyed and presented persuasive case law that included jury awards from the First, Sixth, Eighth, and Tenth Circuits. *See* Dkt. No. 115 at 20. While the Court ultimately determined that these prior awards were inapplicable to the facts of this case,[4] the fruit of PLN's labor is borne out in the Court awarding some amount of presumed damages for Plaintiff's First Amendment claim.

3. The Skill Required to Perform the Services Properly

Few lawyers have the background and experience to litigate First and Fourteenth Amendment issues, especially in the context of prisons and jails. Thus, substantial, particularized skill was necessary to successfully prosecute this action. "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. Counsel's skill should be apparent to the Court as they successfully litigated this case.

4. Experience, Reputation, and the Ability of the Attorneys

The experience, reputation, and abilities of the six attorneys who worked on this case are described in the attached declarations. Jeffrey Fogel, who took greatest responsibility for the management of this case, has spent a career as a plaintiff's civil rights lawyer, including his time as Legal Director of the A.C.L.U. of New Jersey and later as Legal Director of the Center for Constitutional Rights. He has 50 years of experience in the field of civil rights litigation and has taught civil rights both in a classroom and clinical setting. *See* Fogel Decl. at ¶2.

---

[4] Some of PLN's cited jury awards included punitive damages not available in this litigation or were cases where compensatory damages were not at issue on appeal. *See* Dkt. No. 122 at n. 6.

Mr. Fogel shared responsibility for litigating this case with Steven Rosenfield and the in-house attorneys of the Human Rights Defense Center. *See* Rosenfield Decl. ¶1; Marshall Decl. at ¶10. Mr. Rosenfield has over 40 years of experience devoting a vast majority of his work to civil rights cases. Mr. Marshall, HRDC's General Counsel and Litigation Director, has 17 years of experience, and, as in-house counsel to PLN, particularized experience and skill in litigating constitutional issues in the context of prisons and jails.

5. <u>Customary Fees</u>

Messrs. Fogel and Rosenfield regularly charge $450 an hour for work in the Western District of Virginia. Their requested rate of $450 represents the "customary fee for similar work in the community [where the case was litigated]." *Johnson, supra* 488 F.2d at 718.[5] With this Petition, Plaintiff has submitted declarations from local attorneys Brenda Castañeda, Thomas Domonoske, and Douglas McKusick—all with extensive experience in the civil rights arena and the Charlottesville and Harrisonburg divisions of this Court. These declarations indicate that the rates sought by PLN's attorneys are commensurate with those charged by attorneys of similar skill and experience in the Harrisonburg Division of the Western District of Virginia.

6. <u>Awards in Similar Cases</u>

PLN has found a recent case, not only from the Harrisonburg Division but from this Court, supporting the hourly rates requested here, updated to 2019 rates. *See Doe v. Alger,* No. 5:15-cv-35, 2018 U.S. Dist. LEXIS 15365, at *9-10 (W.D. Va. Jan. 31, 2018). In *Alger*—a case involving a civil rights challenge by a university student accused of sexual misconduct and disciplined

---

[5] Mr. Marshall and other attorneys at PLN do not have a "customary" fee, as they work for a non-profit. The fees sought for their work should nonetheless be predicated on the customary fee for lawyers with similar skills and experience performing similar work in the Harrisonburg Division. *See Blum, supra* 465 U.S. at 895.

through the university's administrative process—this Court awarded fees to the student for prevailing on his Fourteenth Amendment due process claim. In awarding similar hourly rates to those sought here,[6] the Court indicated that:

> [T]he requested rates are reasonable for the Western District of Virginia, specifically the Harrisonburg Division. These rates are appropriate given the complexity and novelty of the issues presented (*Johnson* factor 2), the skill required to properly perform the legal services rendered (*Johnson* factor 3), the customary fee for the work performed (*Johnson* factor 5), and the attorneys' experience, reputation, and ability (*Johnson* factor 9).

*Id.* at *11.[7]

Fee awards from sister courts are also persuasive. In *Lux v. Judd,* 868 F. Supp.2d 519 (E.D. Va. 2012), the court awarded fees to the successful challengers of a ballot access statute. The court found that a rate of $400 per hour was "reasonable and within prevailing market rates for comparable cases in Virginia for attorneys with comparable skill, expertise, and reputation" for local counsel who had been practicing since 1993 and had "assisted [plaintiff]'s out-of-state counsel in the navigation of this Court's procedures and practices." *Id.* at 532. In light of this opinion, the $450 hourly rate requested by PLN attorneys Fogel and Rosenfield—who have significantly more pertinent experience than the attorneys in *Lux*—is reasonable. In a challenge to a registrar's refusal to permit an organization to inspect or photocopy rejected voter registration records, the court awarded attorney's fees of $425 an hour to an attorney with "many years of specialized experience pertaining to consumer law." *Randle v. H&P Capital, Inc.,* 2010 WL 2944907, *8 (E.D. Va. July 21, 2010). In addition to Messrs. Fogel and Rosenfield's substantial

---

[6] The rates sought for the years of experience for Mr. Neelakanta and Mr. Mutamba here were not extant in the *Alger* case.

[7] The Court did, however, reduce the number of compensable hours for other reasons. *See Alger,* 2018 U.S. Dist. LEXIS 165957, at *21-34.

experience, the fact that the *Randle* hourly rate was awarded almost a decade ago, when rates were lower, should also persuade the court that PLN's requested rates are reasonable, given the expertise of Plaintiff's counsel.

7. <u>Time Limitations Imposed by the Client or the Circumstances and Preclusion of Other Employment</u>

The work undertaken by Plaintiff's counsel in this case necessarily came at the expense of working on or developing other cases. *See* Fogel Decl. at ¶9; Rosenfield Decl. at ¶6. For Mr. Fogel, this was particularly true due to the time consumed in travel to the Court, as well as to Winchester for depositions. For Messrs. Weber, Neelakanta, Marshall, and Mutamba, it meant that PLN was deprived of their efforts in other litigation elsewhere in the country.

8. <u>Undesirability of the Case</u>

Courts have repeatedly recognized that civil rights litigation is often perceived as undesirable, and that the compensation to a plaintiff's attorney should take that undesirability into account. *Johnson, supra* 422 F.2d at 718 ("Civil rights attorneys face hardship in their communities because of their desire to help the civil rights litigant . . ."). In addition, the contingent nature of the fee for Messrs. Fogel and Rosenfield contributed to the undesirability of the case. *See* ¶ 10 *infra*.

9. <u>Nature and Length of Relationship with Client</u>

Plaintiff was previously represented by Messrs. Fogel and Rosenfield in an action against the Virginia Department of Corrections, which had been censoring its publications. That action resulted in a court ordered settlement in 2010 and no PLN publication has been rejected by VDOC since that settlement. *See* Fogel Decl., ¶ 6; Rosenfield Decl. at 6, 7. Counsel also represented PLN in a similar action against the Virginia Beach Correctional Center which resulted in an

injunctive settlement and attorneys' fees and costs to PLN. *See id; Prison Legal News v. Stolle*, 681 F. App'x 182 (4th Cir. 2017), *aff'g* 129 F. Supp. 3d 390 (E.D. Va. 2015).

10. Fixed or Contingent Fee

The agreement between Messrs. Fogel and Rosenfield and the Plaintiff is fully contingent on obtaining prevailing party status. Plaintiff agreed that all fees awarded for the work of Messrs. Fogel and Rosenfield will be paid to them along with the costs that they advanced. The other counsel in this case are employed by Plaintiff, a not-for-profit, 501 (c)(3) corporation.

11. The Amount Involved and the Results Obtained

*See* Degree of Success, *supra* at 4.

### III.    Costs

As part of the attorney fee award pursuant to § 1988, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983). The costs incurred in this case are set forth in detail. *See* Marshall Decl., Exhibit A. Jeffrey Fogel expended a total of $1,720.42, Steven Rosenfield incurred $138.04, and PLN sustained a total of $1,734.67 in out-of-pocket costs.

### IV.    Conclusion

PLN's attorneys' fees and costs request for this action can be summarized as follows:[8]

| Fees: | Attorney | Hours Spent | Hourly Rate | Gross Total | Net Total[9] |
| --- | --- | --- | --- | --- | --- |

---

[8] PLN has exercised billing judgment and reduced the fee amount requested by all counsel. *See* Marshall Decl., ¶16.

[9] After 10% reduction for billing judgment.

|  |  |  |  |  |
|---|---|---|---|---|
|  | PLN legal team | 475.5 | $250.00-$450.00[10] | $118,260.50 |  |
|  | Jeffery Fogel | 119.3 | $450.00 | $53,685.00 |  |
|  | Steven Rosenfield | 38.4 | $450.00 | $17,280.00 |  |
|  |  |  |  | $189,225.50 | $170,302.95 |
| **Costs:** | PLN legal team |  |  | $1,734.67 |  |
|  | Jeffery Fogel |  |  | $1,720.42 |  |
|  | Steven Rosenfield |  |  | $138.04 | $3,593.13 |
| **TOTAL** |  |  |  |  | **$173,896.08** |

WHEREFORE, Plaintiff PLN respectfully requests that the Court grant this motion and award Plaintiff the requested attorneys' fees and costs.

Respectfully submitted,

/s/Masimba Mutamba
Masimba M. Mutamba, Fla. Bar No. 102772*
Human Rights Defense Center
P.O. Box 1151
Lake Worth, FL 33460
(561) 360-2523
Email: mmutamba@humanrightsdefensecenter.org

* Admitted *pro hac vice*

Jeffrey E. Fogel, VSB #75643
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300 (Tel)
(434) 220-4852 (Fax)
Email: jeff.fogel@gmail.com

*Attorneys for Plaintiff*

---

[10] *See* Marshall Decl., summary at 10.

## CERTIFICATE OF SERVICE

I hereby certify that I delivered a true and accurate copy of the above and foregoing to the following on this 16th day of December 2019 via the Court's ECF/CM system:

Alexander Francuzenko
Broderick Coleman Dunn
Philip Corliss Krone
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030

/s/Masimba Mutamba
Masimba M. Mutamba