UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

PRISON LEGAL NEWS, a project of HUMAN RIGHTS DEFENSE CENTER, a Washington not-for-profit organization,

Plaintiff,

Case No. 5:15-cv-00061-EKD-JCH

vs.

NORTHWESTERN REGIONAL JAIL AUTHORITY *et al.*,

Defendants.

---

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

**INTRODUCTION**

Defendants first prevented Prison Legal News ("PLN") from carrying out its constitutionally protected mission of freely communicating with prisoners at the Northwestern Regional Adult Detention Center ("NRADC" or "Jail"). Next, Defendants stymied PLN's efforts at altogether avoiding this lawsuit by ignoring pre-litigation correspondence sent by Plaintiffs' counsel that alerted Defendants to the unconstitutionality of their censorship policy, leaving PLN no alternative to vindicating its civil rights before this Court. Then, despite the entry of two consent decrees to provide due process and permit delivery of PLN's communications to persons in the Jail, Defendants persisted with a scorched earth litigation strategy, failing to acknowledge PLN's entitlement to damages for the violation of its rights. Now, despite a post-trial judgment and nominal and compensatory damages awarded in PLN's favor against the Northwestern Regional Jail Authority ("NRJA") and Superintendent Whitley individually, Defendants oppose the attorneys' fees and costs to which PLN, as a prevailing

party, is lawfully entitled.

While Defendants are entitled to the aggressive litigation strategy employed in this case, PLN is equally entitled—having prevailed in spite of Defendants' approach—to obtain one final vindication of the time and resources it cost Plaintiff to enforce its rights. Defendants' opposition to PLN's fees and costs: (1) misconstrues the legal authority regarding what hourly rates and billable time PLN's legal team are entitled to; (2) minimizes the victory achieved by PLN; (3) ignores Plaintiff's sworn testimony of the litigation costs incurred; and (4) most egregiously of all, fails to accept responsibility for a hotly contested and drawn-out lawsuit.

## I. PLN's Attorneys' Hourly Rates are Reasonable.[1]

### A. Defendants' Fee Expert's Opinion

Defendants' opposition to the rates sought for PLN's attorneys relies throughout on the opinions of attorney Lori Bentley, who indicates that rates sought for all counsel "exceed[] the prevailing market rate in this area." Dkt. 133-1 ("Bentley Decl."). In addition to PLN's arguments to the contrary *infra*, the nature of Ms. Bentley's experience litigating Section 1983 claims raises serious questions about her opinion. On its own, the fact that her experience stems solely from defending against civil rights claims is not dispositive, but undermines her opinion as to what work a reasonable plaintiff's attorney would perform.

More problematic, though, is the fact that her experience in this arena stems from defending a specific jail authority defendant: the Southwest Virginia Regional Jail Authority ("SWVRJA"). *See, e.g., Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489 (W.D. Va. 2018). Moreover, her firm—of which she is an equity partner (*see* Dkt. 133-1 at ¶ 8)—has

[1] Notwithstanding, PLN concedes Defendants' arguments with respect to reducing the travel time submitted for Plaintiff's counsel by 50% in accordance with the case law of this Court. *See* Section I(D), *infra*.

represented the SWVRJA in other recent civil rights lawsuits in this Court. *Herron v. Skeen*, No. 7:17-cv-00560, 2019 U.S. Dist. LEXIS 133535 (W.D. Va. Aug. 8, 2019); *Kiser v. SWVRJA*, No. 7:16-cv-00129, 2016 U.S. Dist. LEXIS 125809 (W.D. Va. Sep. 15, 2016). This is troubling because Plaintiff is currently litigating a similar censorship case against the SWVRJA. In that case, the parties have settled the damages to which PLN is entitled; however, injunctive relief and attorneys' fees and costs remain unresolved. *See* Joint Stipulation, *Human Rights Defense Center v. Sw Va. Reg. Jail Auth.*, No. 18-cv-00013 (W.D. Va. Nov. 18, 2019). Thus, Defendants' fee expert and her firm have an interest in the outcome of the fee award in this case, as it would be in their client's best interest if the fees to which PLN is entitled here are as low as possible ahead of the fee phase in Plaintiff's case against SWVRJA.[2] The Court should therefore weigh the bias of this expert against her testimony in support of Defendants' opposition.

**B. Attorneys Rosenfield and Fogel's Rates**

Contrary to Defendants' allusion to a rate of $350-$375, *Doe v. Alger* actually supports rates *higher* than $400 per hour for Messrs. Rosenfield and Fogel. In *Alger*, this Court adopted former Chief Justice Kinser's $400 hourly rate for her 40 years of experience. By comparison, and with no disrespect to Justice Kinser's obviously impressive experience, Attorneys Rosenfield and Fogel have 43 and 50 years of experience, respectively. *See* Declarations of Rosenfield and Fogel at Dkt. Nos. 128-2 ¶ 2 and 128-3 ¶ 5, respectively. While the Court did note that the rates sought in *Alger* "are at or near the top end of any reasonable range of rates for a case of this nature in the Harrisonburg market[,]" 2018 U.S. Dist. LEXIS 165957, at *22 n.10, Defendants cannot dispute that Attorneys Rosenfield and Fogel objectively have more civil rights trial

---

[2] Ms. Bentley's firm does not currently represent SWVRJA against PLN. Nevertheless, her representation of SWVRJA gives her a vested interest in minimizing HRDC's fees in order to improve her client's position in that litigation

advocacy experience than the 40-year attorney awarded $400 per hour in *Alger*. These attorneys' superior experience is further attested to in the declarations submitted in support of PLN's Motion for Attorneys' Fees and Costs. *See* Declarations of Castañeda (Dkt. 128-4 at ¶ 8), Domonoske (Dkt. 128-5 at ¶ 5), and McKusick (Dkt. 128-6 at ¶ 5).

The other cases cited by Defendants also do not support their argument for a lower rate for Messrs. Rosenfield and Fogel. While some of the attorneys who sought fees in *Stultz*, *Supinger*, and *Hurd* were at the "partner" level, juxtaposing their levels of experience alongside that of both Mr. Rosenfield and Mr. Fogel is comparing apples to oranges. Taking the most senior attorneys from all three cases respectively: *Stultz*: Dale W. Webb has 9 years less experience than Mr. Rosenfield and 16 years less than Mr. Fogel;[3] *Supinger*: Terry N. Grimes has 4 years less experience than Mr. Rosenfield and 11 years less than Mr. Fogel;[4] and *Hurd*: Paul G. Beers has 9 years less experience than Mr. Rosenfield and 16 years less than Mr. Fogel.[5] The $300 hourly rate awarded in the *Strumbo* case cited by Defendants is least persuasive of all, considering the more recent *Alger* decision from this Court, as well as the fact that rates for attorneys everywhere, including the Western District, have gone up in the past five years.

Defendants also claim that "none of the attorney declarations submitted by PLN attesting to the reasonableness of the hourly rates Plaintiff seeks provide the same level of experience or insight to civil rights litigation in the Western District of Virginia as Ms. Bentley's." Dkt. 133 at 4. Putting aside the aforementioned issues with Ms. Bentley's perspective, Defendants' statement is simply untrue. Attorney Castañeda's Declaration speaks both to her experience litigating civil rights claims in this district, *see* Dkt. 128-4 at ¶¶ 1-3, and to the reasonableness of

---

[3] *See* https://www.fmwm.law/attorney/webb-dale-w/ (last accessed: Feb. 3, 2020).

[4] *See* http://www.terryngrimes.com/grimes.htm (last accessed: Feb. 3, 2020).

[5] *See* https://www.glennfeldmann.com/attorneys/paul-beers/ (last accessed: Feb. 3, 2020).

the $450 hourly rate requested by Messrs. Rosenfield and Fogel. *Id.* at ¶ 8. Furthermore, while the Declarations of Thomas Domonoske and Douglas McKusick do not opine on the reasonable rate for civil rights claims in the Western District in the abstract, these experienced attorneys nevertheless recognize the superior experience of Mr. Rosenfield and Mr. Fogel in this arena, in a manner unambiguously supportive of their $450 hourly rate sought in this case. *See* respectively, Dkt. 128-5 at ¶ 7 ("[t]heir years of practice and experience is in a league of its own..."); Dkt. 128-6 ("...I know the quality of the work performed by Messrs. Rosenfield and Fogel which is excellent and I believe that most lawyers with 40-50 years of experience charge much higher fees than Rosenfield and Fogel[]").

### C. Hourly Rates for PLN's Other Attorneys

#### i. Mr. Weber's Hourly Rate

Defendants challenge plaintiff's former General Counsel and Litigation Director Lance Weber's rate on the basis that Mr. Weber has only 6 years of civil rights experience and that "in accordance with recent case law in this District, Mr. Weber's hourly rate should be reduced to $300." Dkt. 133 at 5. Both statements are actually inapplicable to Lance Weber. Mr. Weber's years of experience cannot be based solely on the 6 years he served as both General Counsel and Litigation Director for the Human Rights Defense Center.[6] Mr. Weber has far more experience representative of his time before, during, and after his employment with Plaintiff. As reflected in current HRDC's current General Counsel and Litigation Director's Declaration, Mr. Weber had ample prior experience "maintain[ing] a full-time litigation practice and handl[ing] cases for both

[6] Even if these 6 years represented the beginning of Mr. Weber's career, since he left his position at HRDC in 2016, his experience level as of the filing of the Motion for Attorneys' Fees and Costs would be 9 years. The proper method is to use current, rather than historic rates, to compensate counsel for the delay in payment. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

individual and institutional clients in the various courts in western Missouri and eastern Kansas." Declaration of Dan Marshall, Dkt. 128-1 at ¶ 12. While the Court in *Alger* awarded another attorney with 22 years of similar experience a rate of $300 per hour, Mr. Weber is entitled to an additional $90 per hour to reflect his managerial experience as HRDC's General Counsel and Litigation Director.[7]

**ii. Mr. Marshall and Mr. Neelakanta's Hourly Rates**

Defendants similarly—and incorrectly—argue that current and former General Counsel and Litigation Directors Dan Marshall and Sabarish Neelakanta have only 2 and 5 years of civil rights litigation experience each.

Mr. Marshall is Board Certified in Criminal Trial Law, a distinction held by only 7% of the more than 100,000 attorneys barred in the state of Florida.[8] Dkt. 128-1 at ¶ 9. Accordingly, Mr. Marshall has extensive experience in, for instance, conducting hearings and jury trials, litigating First Amendment issues in the criminal context, and other constitutional questions which often arise in civil rights cases, such as Fourth Amendment search and seizure issues. Accordingly, while the bulk of Mr. Marshall's experience prior to HRDC was in criminal law, the specifics of his experience makes that background probative of the rate sought for his work on this case. Together with his managerial role regarding HRDC's litigation strategy, his years of experience easily justify the hourly rate sought for his work on this case.

Defendants ignore the evidence in PLN's Motion for Attorneys' Fees and Costs in order

---

[7] In contrast, the attorney in the *Alger* case, Michelle A. Scott, is identified as an "Associate Counsel" at the Center for Individual Rights. *See* https://www.cir-usa.org/staff/ (last accessed: Feb. 3, 2020).

[8] The Florida Bar, *How Many Lawyers Practice in Florida*, The Florida Bar News (Nov. 15, 2015), *available at* https://www.floridabar.org/the-florida-bar-news/how-many-lawyers-practice-in-florida/ (last accessed: Feb. 3, 2020).

to likewise downplay Mr. Neelakanta's level of pertinent experience. In addition to his managerial experience as the immediate former General Counsel and Litigation Director of HRDC, Mr. Neelakanta "has litigated over 50 jury trials and numerous appeals in state and federal courts…and has *almost exclusively focused his practice on criminal, civil, and human rights law*." (Emphasis added). Dkt. 128-1 at ¶ 11a. As Mr. Neelakanta has been practicing law since 2006, and has been predominantly litigating civil rights cases for most of that time, Defendants' argument that he is entitled only to the rate for a 5-year attorney is just as baseless as their argument regarding Mr. Marshall's rate. This is more so considering Mr. Neelakanta's extensive and relevant substantive knowledge, as demonstrated in his publications, presentations, and media appearances. *Id.* at 102. While this Court has awarded attorneys with Mr. Neelakanta's experience a lower hourly rate, given his superior trial advocacy and managerial experience, and his specialized knowledge as demonstrated by his publications and speaking engagements, the $350 hourly rate requested for Mr. Neelakanta is more than appropriate for an attorney of his caliber.

**iii. Mr. Mutamba's Hourly Rate**

Defendants argue that the $250 hourly rate sought for Mr. Mutamba is excessive for "an attorney with four years of legal experience…as [it] exceeds the prevailing market rates of $225 per hour for civil rights litigation in this District." Defendants then argue that "Ms. Bentley provides that Mr. Mutamba's rate should be even lower than the typical associate rates found in the recent case law. As such, Mr. Mutamba's hourly rate should be reduced to $200." (Citation ommitted). Dkt. 133 at 6. Both of these arguments are flawed. First, Mr. Mutamba does not have four years of experience. As attested to in Mr. Marshall's Declaration, and in Mr. Mutamba's resume appended thereto, Mr. Mutamba has been engaged in civil rights litigation

since he was admitted to the Bar nearly seven years ago. Dkt. 128-1 at ¶ 10a:

> [Mr. Mutamba] has handled matters in various state and federal courts and at both the trial and appellate level. Further, Mr. Mutamba represented individuals against municipal police departments in civil rights actions and represented the rights of a student in an administrative proceeding against a school board under the Individuals with Disabilities Education Act (IDEA) and the Americans with Disabilities Act (ADA).

*See also id.* at 97. Accordingly, Mr. Mutamba has at least 2 more years of experience that Defendants or their experts acknowledge.

Secondly, despite his relatively few years of experience, Mr. Mutamba's resume reflects that he has specialized knowledge reflective of a higher experience level than many of his peers. He was a briefing attorney on behalf of PLN it its petition for writ of certiorari from the U.S. Supreme Court on a First Amendment appeal of a case against the Florida Department of Corrections. *See Prison Legal News v. Jones,* 139 S. Ct. 795 (2019). After the Supreme Court declined to hear the case, he was instrumental in securing the $1,187,863.88 in attorneys' fees and costs nevertheless awarded to PLN for prevailing on its Fourteenth Amendment claim. *Prison Legal News v. Inch,* No. 4:12-cv-239, 2019 U.S. Dist. LEXIS 182494 (N.D. Fla. Oct. 22, 2019). Furthermore, Mr. Mutamba has published articles on First Amendment issues, is a member of the Florida Bar's standing Committee on Media and Communications Law, and has conducted numerous federal practice workshops. *Id.* at 98. As with Mr. Neelakanta, these publications and speaking engagements justify an hourly rate slightly higher than typically awarded for attorneys with his years of experience.

**D. Hourly Rates for Travel Time**

PLN acknowledges the authority cited by Defendants reflecting the law in this district that a 50% reduction in compensable travel time is appropriate. Accordingly, Plaintiff does not oppose Defendants' argument that Messrs. Fogel and Mutamba's travel time of 24.1 hours

should be reduced to half their hourly rate. Per the above arguments, however, the Court should find that hourly rate for both attorneys to be $450 and $250 per hour respectively.

## II. The Hours Billed by Plaintiff's Attorneys are Reasonable.

### A. Defendants' Litigation Strategy

As prefaced earlier, the hours expended on this litigation are a direct result of the defense strategy employed by Defendants. At multiple turns, including prior to the filing of the lawsuit, Defendants chose to prolong the course necessary for PLN to enforce its constitutional rights to communicate with persons incarcerated at the NRADC. First, Defendants ignored the pre-suit letter sent by PLN's counsel advising them of the unconstitutionality of the April 1, 2014 policy, under which Plaintiff's publications were censored. *See* Mem. Op., Dkt. 122 at 5. Left with no choice, PLN sought redress before the Court. Next, despite the fact that the parties entered into two separate consent decrees—one providing constitutionally adequate due process and the other permitting the delivery of PLN's materials—*see* Dkt. Nos. 47 and 50, Defendants continued to contest PLN's entitlement to First and Fourteenth Amendment damages.[9] Plaintiff was forced to move for summary judgment on these claims, and also had to respond to Defendants motion for summary judgment. These summary judgment briefings culminated in little benefit to Defendants in the form of the dismissal of Plaintiff's equal protection claim.[10] In contrast, PLN obtained declaratory relief against both the NRJA and Superintendent Whitley individually for their violation of PLN's Fourteenth Amendment rights, with a trial to determine the damages

[9] Rather than cutting the litigation short at this stage, five months into the case, Defendants would ensure the litigation continued almost another five years.

[10] While the Court dismissed Clay Corbin from the case in its Memorandum Opinion on the cross motions, Dkt. 89 at 2, the Court recognized that "PLN conceded that Corbin is no longer an appropriate defendant because he was not the policy-maker and because the question of injunctive relief—for which he might have been a proper defendant—had been resolved" and that "Corbin [was dismissed] per the agreement of the parties."

owed by these Defendants. The Court also permitted PLN's First Amendment liability and nominal and compensatory damages claims against the NRJA and Whitley to proceed to trial. Despite this posture clearly favorable to Plaintiff, Defendants then elected to proceed to trial, rejecting PLN's offer to settle the damages on the morning of trial.[11] Following trial, Defendants again chose the path of most resistance, ignoring further efforts at settlement and engaging in opposing post-trial briefing that argued that PLN was entitled only to nominal damages for only its Fourteenth Amendment claim. Ultimately, the Court disagreed, entering judgment against both Defendants for the Fourteenth Amendment due process violation and against the NRJA in favor of PLN on the First Amendment claim as well, and awarding nominal and compensatory damages to Plaintiff for both claims. *See* Dkt. 123.

In light of Defendants' above-described role in prolonging the litigation in this case, the hours expended by Plaintiff over the four and a half years of litigation are as reasonable as the additional time Defendants are forcing PLN to spend litigating the instant issue of fees.[12] [13] PLN should not be penalized for seeking its hard-earned and well-deserved fees as it not only survived Defendants' war of attrition, but substantially prevailed in spite of it. As the Northern District of Florida recently held that:

> the amount of time expended by Plaintiff's attorneys is commensurate with the

---

[11] Defendants' resistance to settling PLN's declaratory judgment claims on the First Amendment and due process counts is particularly puzzling considering the established case law in the Fourth Circuit, in part by PLN cases against other Defendants. *See Montcalm Publ'g Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996); *Prison Legal News v. Stolle*, 319 F. Supp. 3d 830 (E.D. Va. 2015) (granting injunction against unconstitutional policy and declaring due process violation, but reserving on amount of damages).

[12] Plaintiff's counsel reached out to Defendants upon the entry of the Court's Order and Final Judgment in an attempt to settle the attorneys' fees and costs. Plaintiff did not hear back from Defendants except with respect to the briefing schedule for the fee motion.

[13] In fact, PLN is waiving attorneys' fees for work done regarding the drafting and review of this reply brief, amounting to roughly an additional 15 hours of attorney time.

> time expended by Defendant's attorneys. Defendant zealously defended this case; it cannot now in good faith complain of the consequences.

*Prison Legal News v. Inch,* at *27.

**B. PLN's Staffing of the Case in Light of Defendants' Litigation Strategy**

Defendants essentially argue that too many attorneys and paralegals were tasked with the defense of PLN's constitutional rights. However, in the absence of any unnecessary duplication of efforts, which did not occur here as explained below, the time spent on the case by every member of Plaintiff's legal team was necessary—especially given Defendants' obstinacy—and proportionate to securing the largely successfully outcome in this case.

Defendants' argument that PLN's billing records contain unnecessary duplication is unfounded. With regard to Mr. Rosenfield and Mr. Fogel's entries, Defendants fail to mention that many entries that counsel recognized as duplicative were, in fact, not billed for. *See e.g.*, Dkt. 128-1 at 12 (filing of lawsuit "done by Jeff [Fogel]"). This is in addition to work that was not billed in an exercise of billing judgment. *See e.g., id.* at 12-13, 18, 19-21 for entries billed as zero. Defendants additionally overlook the fact that each of PLN's attorneys' entries reflect the ebb and flow of their involvement in different stages of the case. For example, Mr. Fogel assumed a larger role at the inception of the case with the filing of the complaint (*see* Dkt. 128-1 at 12 cited *supra*). Mr. Rosenfield became more involved at the preliminary injunction stage, culminating in the January 15, 2016 hearing on the motion (*id.* at 13), which ultimately resulted in the entry of the consent decrees by the Court—negotiations for which Messrs. Fogel and Rosenfield participated in phone calls with Defendants' counsel regarding (*see id.*, billing entries of Rosenfield and Fogel dated late January to February 2016). Thereafter, Mr. Fogel handled the bulk of the discovery in the case, including single-handedly taking the Defendants' depositions

in this case,[14] *id.* at 24, before beginning work on PLN's motion for summary judgment. *Id.* at 24-25.

Assuming *arguendo* some inadvertent duplication of efforts, however, as recognized in Mr. Marshall's Declaration, Dkt. 128-1 at ¶ 16, Defendants fail to acknowledge that the fees sought by PLN's legal team have, in fact, already been reduced by an appropriate across-the-board reduction. *See* Dkt. 128-1 at 10; Dkt. 129 at n. 8 and 9. Such an exercise in billing judgment represents an appropriate reduction for any inadvertent duplication of PLN's efforts, Dkt. 128-1 at ¶ 16, as well as reductions for some time billed to PLN's unsuccessful equal protection claim. *Id.* at n. 1.

Regarding PLN's staff, Defendants mischaracterize the work done by Plaintiff's paralegals as "purely clerical tasks are ordinarily part of the law office's overhead…" *Brown v. Mountain View Cutters, LLC*, 222 F. Supp. 3d 504, 514 (W.D. Va. 2015). PLN's paralegals' billing reflects work that is far beyond being purely clerical. The outreach mailings by Plaintiff's staff were necessitated by the inability of PLN's publications to reach their intended recipients due to Defendants' unconstitutional policy. Given the inadequate notice for the censorship of its publications, *see* Dkt. 89 at 3; 122 at 5, PLN had to send outreach mailings to prisoners in the Jail in an attempt to discern the extent and reason for the censorship. Moreover, once the lawsuit began, PLN continued these mailings to assess Defendants' compliance with the consent decrees between the parties. This process required confirming the custody status of PLN's subscribers at the Jail, updating accounts based on custody checks indicating those prisoner no longer at the NRADC—including recording those Changes of Address ("COA's")—and setting up accounts for new subscribers wishing to receive PLN's materials. Detailed entries of the painstakingly

[14] PLN withdraws attorneys Mutamba and Neelakanta's billing for telephonically attending the deposition of Paul Wright, which was defended by Mr. Fogel.

meticulous sort challenged by Defendants are the reasonable result. *See* Dkt. 133 at 15 (quoting billing entry at 128-31 at 50). Rather than being clerical or secretarial, the work performed by Kathy Moses and PLN's other paralegals was born of Defendants' censorship and crucial to the diligent enforcement of Plaintiff's constitutional rights in this case. Accordingly, the time billed in this regard is reasonable.

Defendants elsewhere argue against the fact that PLN's legal team's records reflect conferences of attorneys and staff. With respect to Messrs. Rosenfield and Fogel, given the different stages each lead attorney was engaged in, it is hardly unusual that these two communicated regularly to ensure that one knew what the other was doing. Pertaining to the conferences among Plaintiff's legal team, the work of multiple attorneys is compensable under the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988 ("Section 1988"). *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). Multiple attorneys have to discuss legal strategy, conference about factual developments, discuss discovery matters with their clients, read drafts of briefs and court orders, and generally stay abreast of the litigation. That is how the modern practice of law operates. A reflection by another district court equally applies to this case: "[t]he complexity of this case justifies collaboration by all counsel on matters of great importance and difficulty and facilitated distribution of tasks among attorneys." *Large v. Fremont Cty., Wyoming*, No. 05-CV-0270, 2013 WL 12342417, at *6 (D. Wyo. Sept. 20, 2013). *See also Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010) ("[c]ommunication and coordination are essential to successful litigation, whether a colleague works down the hall or across the country.")

The singling out of Robert Jack's billing entry demonstrates the flawedapproach Defendants' have taken in their defense of this case. Not only does the law permit—indeed

expect—collaboration among counsel, as discussed above. Additionally, under Section 1988, work performed to prepare a case for suit is compensable. *Webb v. Bd. Of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985) (stating "Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case.") Mr. Jack's participation in an 18-minute pre-litigation strategy call over the nearly five years of litigation forced upon PLN by Defendants is more than reasonable. This is especially true where, as here, Defendants' unconstitutional policy was instituted without due process: it necessarily took PLN's in-house team some time to confirm and determine the Defendants' basis for censoring PLN's publications ahead of developing the litigation strategy that proved successful.

## III. THE SUCCESS OF PLN'S LAWSUIT WAS FAR FROM "LIMITED".

On the subject of the successfulness of PLN's lawsuit, Defendants' claims to the contrary have no basis in fact. As outlined in Plaintiff's Motion for Attorneys' Fees and Costs, PLN sued Defendants on three claims—a First Amendment and two Fourteenth Amendment claims asserting that Defendants violated Plaintiff's rights under both the due process and equal protection clauses. *See* Dkt. 129 at 3. While the Court dismissed PLN's equal protection claim, Plaintiff prevailed on both the First Amendment and Fourteenth Amendment due process claims. PLN's litigation resulted in two separate consent decrees that changed the legal relationship between the parties by requiring constitutionally required due process and permitting delivery of PLN's publications going forward. Moreover, PLN obtained declaratory relief that the NRJA and Superintendent Whitley violated PLN's right to due process. Following trial, this Court also granted declaratory relief that the April 1, 2014 policy was unconstitutional and awarded both

nominal and compensatory damages against NRJA and Whitley for violating the Fourteenth Amendment, and against NRJA for violating PLN's First Amendment right to free speech. By any measure, therefore, PLN's lawsuit against Defendants was successful in all of the following: changing Defendants' unconstitutional policy, permitting delivery of Plaintiff's materials in Defendants' facility, and finding the NRJA and Whitley liable for nominal and compensatory damages as a result of the damages PLN sustained due to the April 1, 2014 policy.

Defendants argue that PLN's fees should be reduced because it did not obtain the damages *amount* sought in presumed and cost damages at trial. However, PLN essentially got everything it requested in this case: a declaration that its constitutional rights were violated, damages to compensate it for the violations, and two consent decrees to prevent continuedviolations in the future. The fact that PLN prevailed on its compensatory damages claims is instructive here. Indeed, the Fourth Circuit's admonition of previous litigation by PLN serves to distinguish the result obtained here:

> We disagree with PLN's arguments that the district court's calculation was unfair or arbitrary. As noted above, the court explained in detail the damages sought, the relief obtained in the case, and its reasoning for reducing the fee award. The court specifically—and correctly—pointed out that PLN unsuccessfully "pursued money damages at all stages of the case." In its final analysis, the court clearly weighed "[PLN]'s tangible and substantial victories on some of its § 1983 claims, while also taking into account Defendants' success in avoiding any monetary damages as well as defending the constitutionality of their prior exclusion of all of [PLN]'s publications from the VBCC based on the lawful VBSO 'ordering forms' policy."

*Prison Legal News v. Stolle,* 681 F. App'x 182, 185-86 (4th Cir. 2017) (internal citations omitted). Unlike in *Stolle*, PLN successfully "pursued money damages at all stages of the case" in addition to obtaining two consent decrees and declaratory judgment against Defendants' prior policy.

## IV. PLN Submitted Sufficient Evidence To Recover Its Costs.

Defendants erroneously claim that PLN has not provided sufficient documentation of the costs incurred in this litigation, and that the expenses submitted by Defendants are "unverified and unsupported with receipts, invoices, or bills." Dkt. 133 at 19. In fact, all costs submitted by plaintiff as supported by evidence in the form of the sworn declarations of attorneys Rosenfield, Fogel, and Marshall. In their response Defendants omitted the pertinent language from *Stultz*: "the Fourth Circuit has affirmed that an *unverified* chart of expenses, without receipts, invoices, or bills attached, is not adequate documentation to support an award of costs." 2019 U.S. Dist. LEXIS 170183, at *78. As PLN's statements regarding costs and expenses are contained in sworn declarations, this evidence is sufficient.

From the details of the costs incorporated into these sworn statements, one can easily determine what the expenses were for and whether they were reasonable for the case. *See Hodges v. Sch. Bd. of Orange Cty., Fla.*, No. 6:11-CV-135-ORL-36, 2014 WL 6455436, at *14 (M.D. Fla. Nov. 13, 2014) (a request for expenses must "enable[] the court to determine what expenses were incurred by the party and the party's entitlement to an award of those expenses"). That is the standard that must be met; there is no requirement to provide actual receipts. *See Ela v. Destefano*, No. 613-CV-491-ORL-28KRS, 2015 WL 7839723, at *8 n. 13 (M.D. Fla. Dec. 2, 2015) (rejecting the argument that invoices must be submitted and noting that "an affidavit of Plaintiff's counsel . . . and a document accounting for each taxable cost" sufficient); *Crowe v. Lucas*, 479 F. Supp. 1258, 1263 (N.D. Miss. 1979) (awarding costs based on simple itemization without receipts).

## CONCLUSION

Congress fully intended the Civil Rights Attorney's Fees Act to prompt plaintiffs to act as citizen enforcers or "private attorneys general" advancing the nation's civil rights objectives and

vindicating the liberty of all citizens. *Hensley v. Eckerhart,* 461 U.S. 424, 445 (1983). Where defendants force plaintiffs to run the full gauntlet of the litigation process, and plaintiffs emerge triumphant for all their efforts, courts should award fees and costs under Section 1988 to engender faith in the judicial system and act as a deterrent against future curtailment of civil liberties.

WHEREFORE, Plaintiff PLN respectfully requests that this Court award its fees and costs as submitted in Plaintiff's Motion for Attorneys' Fees and Costs, with the limited modifications noted herein.

Respectfully submitted,

*/s/ Jeffrey Fogel*
Jeffrey E. Fogel, VSB #75643
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300 (Tel.)
(434) 220-4852 (Fax)
Email: jeff.fogel@gmail.com

*Co-counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I delivered a true and accurate copy of the above and foregoing to the following on this 7th day of February 2020 via ECF:

Alexander Francuzenko
Philip Corliss Krone
Andrew Jules Tureaud
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030

/s/ *Jeffrey Fogel*
Jeffrey E. Fogel